UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

          Plaintiff,

v.

XAZIER BONNER,

          Defendant.

Criminal case no. 16-cr-20055

HON. MATTHEW F. LEITMAN
United States District Judge

## GOVERNMENT'S RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Xazier Bonner robbed or attempted to rob six pharmacies—armed with a firearm each time. Then, in the second part of a double whammy, Bonner sold the prescription pills he stole during the robberies for thousands of dollars—disregarding of course the deleterious effects illegal prescription pills has on the community. As a result, the government charged Bonner with interference with commerce by robbery and brandishing a firearm during and in relation to a crime of violence. R. 14: Indictment, 28-31. Bonner pleaded guilty to both counts. R. 51: Plea Agreement, 130-153. This Court sentenced him to a below guideline sentence of 96 months' imprisonment. R. 59: Judgment, 229-234. Bonner, who is slightly obese but otherwise a healthy 27 year old, now wants out of prison because of the COVID-19 pandemic. He has moved for compassionate release under 18 U.S.C. §

3582(c)(1)(A). However, Bonner's dangerous criminal conduct and comparatively minor health issue do not support compassionate release. His motion should be denied.

First, Bonner does not satisfy the substantive criteria for compassionate release because his alleged hypertension and slight obesity, even during the coronavirus pandemic, do not present "extraordinary and compelling reasons" to warrant a sentence reduction. See 18 U.S.C. § 3582(c)(1)(A). Nor does the short-term outbreak of COVID-19 at Fort Dix provide a justification for release. There are currently 16 confirmed positive inmates at Fort Dix. *See* BOP Coronavirus (last checked 12/14/2020).

Second, even if Bonner was eligible for compassionate release, the § 3553(a) factors do not support early release. Bonner's past criminal conduct, which includes multiple armed robberies, establishes that he is a serious danger to the community.

**Background**

On December 11, 2015, Xazier Bonner and two accomplices robbed the MI Care Pharmacy in Mt. Clemens. The robbery was planned; Bonner and his accomplices possessed firearms, wore clothing that concealed their identity, and brought a bag in which to put controlled substances. When he entered the pharmacy, Bonner jumped the counter and pointed his firearm at two employees.

Once inside, the crew demanded the controlled substances from the safe. In obvious fear for their safety, the employees complied. Bonner and his accomplices put the controlled substances from the safe into a bag that they had brought with them. The perpetrators also stole controlled substances off of the shelves. Bonner and his accomplices then forced, at gunpoint, the employees to a back room of the pharmacy and locked them inside. Bonner and his accomplices left the pharmacy and fled the scene in a car. The crew's spoils included Alprazolam, Hydrocodone, Oxycodone, and Oxymorphone, which they sold on the street for hefty sums.

Bonner's involvement in the armed robbery of MI Care Pharmacy was not an isolated incident—he participated in the robbery or attempted robbery of at least five other pharmacies. More specifically, Bonner partook in the robberies of Kelly Pharmacy, Al Ameer Pharmacy, Carpenter's Pharmacy, Universal Pharmacy, and the attempted robbery of Marinco Pharmacy. *See* Gov't Sealed Exhibit 1.

Bonner is 27 years old and is currently incarcerated at Fort Dix FCI. His projected release date is October 4, 2022. Bonner now moves for compassionate release, citing hypertension, obesity, and the COVID-19 pandemic. Bonner appropriately exhausted his administrative remedies prior to requesting compassionate release from this Court.

## Argument

**I.     The Court should deny Bonner's motion for compassionate release.**

Bonner's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

The compassionate release statute contains overlapping requirements for scrutinizing an inmate's eligibility for release. 18 U.S.C. § 3582(c)(1)(A). One, an inmate must demonstrate that "extraordinary and compelling reasons" warrant a reduction in his sentence. *Id.* Two, release must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* And three, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A).

Bonner does not satisfy the requirements for release. There is scant evidence that he has hypertension; his obesity is slight and well-managed; and, while Fort

Dix suffered a COVID-19 outbreak for a period of time, there are a limited number of positive cases at that facility now. Alternatively, the § 3553(a) factors do not support release because, among other reasons, Bonner is a danger to the community.

### A. Bonner has not shown "extraordinary and compelling" reasons for release.

Bonner has not satisfied the statutory requirement of showing that "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). That statutory language requires that a defendant satisfy two strict criteria to be initially eligible for compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). First, the defendant's reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). Second, the defendant's reasons must be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold. Bonner has not done so here.

Bonner's reasons for release are neither "extraordinary" nor "compelling". Bonner relies on his alleged hypertension, slight obesity, and the conditions at Fort

Dix as reasons for release. But these conditions do not satisfy the statutory requirements.

First, *everyone* in our society faces a risk from Covid-19 right now. Nearly 300,000 Americans have now died from this terrible disease. So as the Sixth Circuit has stressed, "generalized fears of contracting Covid-19, without more," do not justify compassionate release. *United States v. Jackson*, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13, 2020); *accord United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020); *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020).

Second, Bonner's claim of suffering from hypertension is simply not supported by the record. Indeed, no medical professional has ever diagnosed Bonner with hypertension. To diagnose hypertension, multiple blood pressure readings during the same examination with several appointments is necessary. "Your doctor will likely take two to three blood pressure readings each at three or more separate appointments before diagnosing you with high blood pressure. This is because blood pressure normally varies throughout the day, and it may be elevated during visits to the doctor (white coat hypertension)." *See* [Mayoclinic: high-blood-pressure diagnosis-treatment](#).

Here, Bonner relies on two blood pressure readings over six months apart in support of his claim. One was normal, and the other was high. According to all

metrics, a single high blood pressure reading cannot diagnose hypertension. *Id.*; *see also* CDC: blood pressure (blood pressure must "consistently" be out of range for a diagnosis of hypertension). There is also no mention in Bonner's PSR that he suffers from high blood pressure, (PSR ¶¶ 47-49), and Bonner does not take medication for high blood pressure. Bonner simply has not demonstrated that he has hypertension.

Even if Bonner did not have hypertension, there is contradictory evidence that it places an individual at an increased risk of serious illness from COVID-19. The CDC has identified a set of medical conditions that *might* place a person at increased of severe illness or death from COVID-19. *See* CDC: people-with-medical-conditions. These conditions include hypertension. However, there is only mixed evidence as to whether hypertension is a medical condition that increases a person's risk of severe illness from COVID-19, with multiple studies reaching different conclusions about the risk associated with hypertension. *See* CDC: need-extra-precautions.

In short, Bonner has not shown that he has hypertension and has not demonstrated that this is an extraordinary and compelling reason for a sentence reduction.

Bonner also claims to be obese, and according to the CDC, he is. CDC: obesity (BMI between 30 and 40). Bonner is 5'6", (PSR ¶ 47), and as of May 2020

he had a BMI of 32.6. *See* Sealed Gov't Exhibit 4. So while Bonner meets the definition of obesity, he is on the low end of the range.

The CDC has warned that individuals who are obese are at increased risk of severe illness from Covid-19. But having a CDC risk factor does not necessarily equate to an "extraordinary and compelling reason" for a sentence reduction. Indeed, a determination of a reduction in sentence under § 3582(c)(1)(A) is an individualized assessment, and it is the defendant's burden of establishing that compassionate release is warranted. *United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537, at *2 (D. Kan. Aug. 24, 2020).

A particularized review of Bonner's obesity reveals that it is not an extraordinary and compelling reason for a sentence reduction. First, Bonner is on low end of the obesity scale with a BMI of 32.6. Second, a review of Bonner's medical records does not reveal any medical complications related to his weight or obesity. *See* Sealed Gov't Exhibits 2 and 3; *see also United States v. Tranter*, 2020 WL 3841268 (N.D. Ind. July 8, 2020) (denying Covid-19 based compassionate release request because the defendant "has identified no current medical issues resulting from his obesity" and noting that "BMI alone provides little insight into [a defendant's] physical condition" because it is a "notoriously blunt tool with 'clinical limitations' ") (citing CDC materials). Rather, Bonner appears to be an active young man without health restrictions or limitations. *See* Sealed Gov't

Exhibits 2 and 3. Third, Bonner's obesity is well-managed. At sentencing, Bonner weighed 225 pounds (BMI of 36.3). His last registered weight was 214 pounds. Bonner has lost over 10 pounds since the time of sentencing. This is excellent; but, unlike several permanent medical conditions that make people more susceptible to serious illness from COVID-19 (chronic kidney disease, COPD, sickle cell, etc.), Bonner's slight obesity is curable and impermanent. Having a CDC risk factor that an individual can control is far less compelling than an uncontrollable one. Undoubtedly, some cases obesity can satisfy the "extraordinary and compelling" requirement, this, however, is not one of those cases.

This conclusion is consistent with courts within this district, and around the country, that have declined to grant compassionate release to inmates with obesity, even when the inmate had other health conditions, which Bonner does not. *See, e.g.*, *Tranter*, at \*2-5 (denying compassionate release to 36-year-old former smoker with BMI of 33.1); *United States v. Pride*, 2020 WL 3971652, at \*2 (D. Colo. July 14, 2020) (denying compassionate release to 37-year-old with hypertension and BMI of 40.4); *United States v. Peaks*, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (denying compassionate release to 31-year-old with hypertension and BMI "a little over 44"); *United States v. Watkins*, 10-20545, 2020 WL 5035111 at \*4 (E.D. Mich. August 11, 2020) (BMI of 34 and hypertension); *United States v. Harvey*, 18-20444, 2020 WL 4284161 at 3 (E.D. Mich. July 27, 2020) (BMI of

36.8); *United States v. Contrell Smith*, 04-80857 (E.D. Mich. August 25, 2020) ("And there is no indication that any of Smith's conditions [BMI of 32, hypertension, and sickle cell trait] can be reasonably understood to be a 'serious physical or medical condition.'"); *United States v. Sorrell*, 13-20764, 2020 WL 5103202 at * 1 (E.D. Mich. August 12, 2020) (BMI of 33.8 and asthma). In sum, Bonner's slight obesity is not enough to qualify for extraordinary and compelling reasons justifying compassionate release. He is a young man in good health with no medical complications who has a history of controlling his weight.

Bonner also asserts that the conditions at Fort Dix are extraordinary and compelling circumstances that warrant release. The government disagrees. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *cf. Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020).

The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from COVID-19 to Bonner and other inmates. *See id.* at 833–34. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Id.* at 833. Like all institutions, penal and

otherwise, the Bureau of Prisons has not been able to eliminate the risks from COVID-19 completely, despite its best efforts. For a substantial period of time, Fort Dix's battle against COVID-19 was successful. But, just like we have seen in the community at large, Fort Dix had a recent outbreak of COVID-19. Personnel at Fort Dix, however, have coherently endeavored to combat COVID-19. *See Byrne v. Ortiz*, 20-cr-12268, 2020 WL 7022670 at *4 (D. New Jersey November 30, 2020); *id.* at ECF No. 6, PageID 5-14 (outlining BOP's "Action Plan" to combat the spread of COVID-19 and enhanced cleaning protocols and quarantine units at Fort Dix). Fort Dix now has 16 confirmed positive cases. With regard to Bonner, these measures apparently have been successful as there is no indication that he has contracted the virus and his medical records are absent of any evidence that he had COVID symptoms. *See* Gov't Exhibit 3. The Bureau of Prisons' measures will help federal inmates remain protected from COVID-19 and ensure that they receive any required medical care during these difficult times. Given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 961 F.3d at 845—the Court should deny Bonner's motion for compassionate release.

      Peripherally, the Bureau of Prisons has also responded to COVID-19 by increasing the placement of federal prisoners in home confinement. The Bureau of Prisons' efforts on this point are not hypothetical. Nearly 18,500 federal inmates

have been granted home confinement since the COVID-19 pandemic began. BOP Coronavirus FAQs. As the Sixth Circuit recently stressed, these efforts show that "[t]he system is working as it should": "A policy problem appeared, and policy solutions emerged." *United States v. Alam*, ___ F.3d ___, No. 20-1298, 2020 WL 2845694, at *5 (6th Cir. June 2, 2020). The Bureau of Prisons, after all, cannot open its facilities' gates indiscriminately and unleash tens of thousands of convicted criminals, en masse. *See id.* It must focus on the inmates who have the highest risk factors for COVID-19 and are least likely to engage in new criminal activity.

At bottom, Bonner's slight obesity, even when considered alongside the COVID-19 pandemic, does not rise to the level of an "extraordinary and compelling" circumstance. Because Bonner's showing regarding the extraordinary and compelling component of relief is insufficient, the Court should deny his motion. *United States v. Myers*, 18-20633, 2020 WL 4934343 at *2; *United States v. Bradley*, 16-20307, 2020 WL 4192545, * 4 (E.D. Mich. July 21, 2020). In an abundance of caution, however, the government will address the § 3553 (a) factors.

### B.    The factors in 18 U.S.C. § 3553(a) weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons", he is still not entitled to compassionate release. Before ordering relief, the Court must

consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So, even if the Court were to find that Bonner has established "extraordinary and compelling" reasons for a sentence reduction, the § 3553(a) factors do not support early release.

First, the nature and circumstances of Bonner's offense weigh heavily against release. *See* 18 U.S.C. § 3553(a)(1). Bonner committed an armed robbery of a pharmacy during which he threatened multiple people with his firearm. Bonner deliberately placed others in fear of being gravely injured so that he could steal controlled substances and make money by selling them. This was an extremely dangerous criminal act—any time a deadly weapon is introduced into a highly intense circumstance, such as a robbery, disastrous and unintended consequences are possible. Further, the charged robbery was hardly spur of the moment; the crew brought masks, gloves, guns, and a bag for the drugs—in other

words, the robbery involved meaningful planning and aforethought. The plot was also formulated without regard to the safety and security of the victims, placing financial gain above the victim's safety. The nature of Bonner's offense weighs significantly against release.

Second, Bonner's history and characteristics do not weigh in favor of release either. *See* 18 U.S.C. § 3553(a)(1). Bonner's lone criminal conviction, which involved assaultive conduct (PSR ¶ 35), is not representative of defendant's actual criminal history. As described above, defendant was involved in the armed robbery of several pharmacies in addition to the one to which he pleaded guilty. More specifically, Bonner participated in four additional robberies and one attempted robbery, all with firearms. *See* Sealed Gov't Exhibit 1. All of the completed robberies were committed in similar fashion to the armed robbery of MI Care. Bonner and his accomplices entered the pharmacy armed with firearms, threatened the employees with their guns, stole controlled substances, and sold the pills on the street. *Id.* This factor weighs heavily against release as well.

While Bonner's efforts to improve himself while incarcerated are laudable, being a serial armed robber is difficult to overcome, especially after receiving a break by not being charged with these robberies *and* receiving a below-guideline sentence. And while Bonner has family support and a limited criminal history, the

Court accounted for these aspects of his background (and other mitigating features) when it imposed the below guideline sentence.

Finally, Bonner's release plan appears flawed. It essentially places him back into the same environment and under the same guidance as when he committed the underlying robberies. Mr. Bonner plans to reside with his mother on Faust if he were to be release early. Def. Brief, 14. However, Bonner was residing with his mother on Faust when he committed the underlying robberies. PSR ¶ 46. His plan is unsound.

In sum, a reduction in sentence would not reflect the seriousness of the offenses, promote respect for the law, afford adequate deterrence, and protect the public from possible further crimes by the defendant. So even if Bonner were eligible for compassionate release, the § 3553(a) factors weigh against early release.

## II. If the Court were to grant Bonner's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Bonner's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

## Conclusion

This Court should deny Bonner's motion for compassionate release.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

Dated: <u>December 14, 2020</u>

*s/ A. TARE WIGOD*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9191
tare.wigod@usdoj.gov
P58479

## CERTIFICATION OF SERVICE

I hereby certify that on December 14, 2020, the foregoing document was electronically filed, by an employee of the United States Attorney's Office, with the Clerk of the Court using the ECF system, which sends notification to the attorney of record.

*s/ A. TARE WIGOD*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9191
tare.wigod@usdoj.gov
P58479